FILED
2011 Aug-31  AM 11:43
U.S. DISTRICT COURT
N.D. OF ALABAMA

## IN THE UNITED STATES DISTRICT COURT
## FOR THE NORTHERN DISTRICT OF ALABAMA
## MIDDLE DIVISION

| | | |
|---|---|---|
| **DON SMITH and** | ) | |
| **CHRISTINE SMITH,** | ) | |
| | ) | |
| *Pro Se* **Plaintiffs,** | ) | |
| | ) | |
| **v.** | ) | **Case No.: 4:11-CV-3084-VEH** |
| | ) | |
| **BANK OF DADE,** | ) | |
| | ) | |
| **Defendant.** | ) | |

---

## MEMORANDUM OPINION

### I.      Introduction.

This case arises from foreclosure proceedings instituted by the Defendant, Bank of Dade, against the Plaintiffs' property.  Plaintiffs Don and Christine Smith, acting *pro se*, filed a complaint in the Circuit Court of DeKalb County on August 3, 2011, raising various state law claims against the Bank of Dade related to the Bank's initiation of foreclosure proceedings.  (*See* Doc. 1-2).  The Bank timely removed the case to this court on August 23, 2011.  (Doc. 1).  The case was reassigned to the undersigned judge on August 25, 2011.  (Doc. 3).

Presently before the court is the Defendant's Notice of Removal and supporting documentation, which raises both federal question and diversity jurisdiction as

grounds for removal.  After *sua sponte* examining the propriety of removal, however, the court determines that it does not have subject matter jurisdiction over this case. Accordingly, this case is due to be remanded for the reasons set forth below.

## II.   Remand Standard.

A case may only be removed to federal court if the federal court has jurisdiction over the action at the time the notice of removal is filed.  *See generally Pullman Co. v. Jenkins*, 305 U.S. 534 (1939).  The removing defendant must establish the propriety of removal under 28 U.S.C. § 1441.  *See Friedman v. New York Life Ins. Co.*, 410 F.3d 1350, 1353 (11th Cir. 2005) ("In removal cases, the burden is on the party who sought removal to demonstrate that federal jurisdiction exists.").  Further, because removal infringes upon state sovereignty, removal statutes must be construed narrowly, with all doubts resolved in favor of remand.  *See Univ. of S.  Ala. v. Am. Tobacco Co.*, 168 F.3d 405, 411 (11th Cir. 1999) ("Because removal jurisdiction raises significant federalism concerns, federal courts are directed to construe removal statutes strictly.") (citation omitted); *Burns v. Windsor Ins. Co.*, 31 F.3d 1092, 1095 (11th Cir. 1994) ("[R]emoval statutes are construed narrowly; where plaintiff and defendant clash about jurisdiction, uncertainties are resolved in favor of remand.") (citation omitted).

"Federal courts are courts of limited jurisdiction.  They possess only that power

authorized by Constitution and statute." *Kokkonen v. Guardian Life Ins. Co. of America,* 511 U.S. 375, 377 (1994). For removal to be proper, the court must have subject matter jurisdiction over the case. "Only state-court actions that originally could have been filed in federal court may be removed to federal court by the Defendant." *Caterpillar Inc. v. Williams*, 482 U.S. 386, 392 (1987). If the court finds itself without subject matter jurisdiction, it must remand the case. *See* 28 U.S.C. § 1447(c) (providing, in relevant part, that "[i]f at any time before final judgment it appears that the district court lacks subject matter jurisdiction, the case shall be remanded"). Subject matter jurisdiction cannot be waived, and a jurisdictional defect can be raised at any time by either the parties or the court. *Sosna v. Iowa*, 419 U.S. 393, 398 (1975); *Am. Fire & Casualty Co. v. Finn*, 341 U.S. 6, 17-18 (1951).

In reviewing a removal petition, the court is especially mindful that the burden rests on the party who seeks removal to demonstrate that federal jurisdiction exists. *Friedman v. New York Life Ins. Co.,* 410 F.3d 1350, 1353 (11th Cir. 2005); *Williams v. Best Buy Co.*, 269 F.3d 1316, 1319 (11th Cir. 2001).

## III.  Discussion.

Because federal courts are courts of limited jurisdiction, "a federal court has an independent obligation to review its authority to hear a case before it proceeds to the merits." *Mirage Resorts, Inc. v. Quiet Nacelle Corp.,* 206 F.3d 1398, 1400-01

3

(11th Cir. 2000).  Here, the Defendant argues that this court has jurisdiction over the action primarily under 28 U.S.C. § 1331, federal question jurisdiction, and alternatively under 28 U.S.C. § 1332, diversity jurisdiction.  However, upon careful review, the court finds that the Notice of Removal does not establish this court's subject matter jurisdiction under either form of jurisdiction.

### A.    <u>Federal Question</u>

Defendants rely upon 28 U.S.C. § 1331 as the primary basis for this court's subject matter jurisdiction.  (Doc. 1, Notice of Removal, ¶¶ 2, 8-11).  Section 1331 provides that "[t]he district courts shall have original jurisdiction of all civil actions arising under the Constitution, laws, or treaties of the United States."  28 U.S.C. § 1331. The "well-pleaded complaint rule" governs whether this court has federal question jurisdiction.  *See Merrell Dow Pharmaceuticals Inc. v. Thompson*, 478 U.S. 804, 808 (1986) ("Since a defendant may remove a case only if the claim could have been brought in federal court, 28 U.S.C. § 1441(b), moreover, the question for removal jurisdiction must also be determined by reference to the 'well-pleaded complaint.'").

Under § 1331, federal courts have jurisdiction to hear "only those cases in which a well-pleaded complaint establishes either that federal law creates the cause of action or that the plaintiff's right to relief necessarily depends on resolution of a

substantial question of federal law." *Franchise Tax Bd. v. Construction Laborers Vacation Trust*, 463 U.S. 1, 27-28 (1983).  Although the "vast majority" of federal question cases contain a federal law that creates the plaintiff's cause of action, *see Merrell Dow*, 478 U.S. at 808, federal question jurisdiction is not limited to those cases.  There are some situations in which, even though the federal law does not *create* the cause of action, the case depends on the resolution of a federal question sufficiently substantial to "arise under" federal law.  *See Franchise Tax Bd.*, 463 U.S. at 27-28; *see also Smith v. Kansas City Title & Trust Co.*, 255 U.S. 180, 199 (1921) (explaining that federal jurisdiction exists when the right to relief "depends upon the construction or application" of federal law and the claim "is not merely colorable").

Thus, to sustain federal question jurisdiction in this case, the Defendant must plausibly demonstrate either (1) the existence of a federal law that potentially creates a cause of action for Plaintiffs based on the allegations of Plaintiffs' complaint, or (2) that disposition of this case, as alleged by Plaintiffs, depends on the resolution of a substantial federal question.  The Bank of Dade is unable to demonstrate either prong.

Upon studying the allegations of the removed complaint (*see* Doc. 1-2), the court finds no count that asserts a federal claim or seeks relief pursuant to federal law. The Bank of Dade specifically relies on Count 9 of the underlying complaint to argue that federal question jurisdiction exists.  However, Count 9 contains an invasion of

privacy claim expressly brought under "Alabama state law."  (*See* Doc. 1-2, Complt. ¶ 55).  In Alabama, invasion of privacy is a tort claim that has developed under the common law.  As the Alabama Supreme Court has explained:

> It is generally accepted that the invasion of privacy tort consists of four distinct wrongs: 1) the *intrusion upon the plaintiff's physical solitude or seclusion*; 2) publicity which violates the ordinary decencies; 3) putting the plaintiff in a false, but not necessarily defamatory, position in the public eye; and 4) the appropriation of some element of the plaintiff's personality for a commercial use. *Norris v. Moskin Stores, Inc.*, 272 Ala. 174, 132 So. 2d 321 (Ala. 1961), citing W. Prosser, *Law of Torts*, pp. 637–39 (2d ed. 1955).

*Phillips v. Smalley Maintenance Services, Inc.*, 435 So. 2d 705, 708 (Ala. 1983) (emphasis added).  Consistent with Alabama's invasion-of-privacy tort framework, Plaintiffs labeled Count 9 as follows: "INVASION OF PRIVACY BY INTRUSION UPON SECLUSION."

Within Count 9, which spans paragraphs 54 to 65, the Plaintiffs make passing references to two federal acts, the Fair Debt Collection Practices Act ("FDCPA") in paragraphs 56 and 57, and the "Gramm Leech Bliley Act" (sic) in paragraphs 58 and 59.  The apparent purpose of those citations is to support the premise that Congress has "recognized" the "right to privacy" in other consumer contexts, neither of which are relevant to the facts and circumstances of this case.  As the court reads Count 9, therefore, it does not seek to bring claims *under* the FDCPA or the Gramm-Leach-

Bliley Act, but cites them only as supplemental support for the general concept that a right to privacy *exists*. Reading Count 9 as a whole, the language used plainly indicates that Plaintiff's "invasion of privacy" claim is a common law tort that falls under Alabama state law, not under either of the federal statutes cited.

Regardless, the passing references to two federal statutes do not, in and of themselves, confer federal question jurisdiction over Plaintiffs' state law tort claim. Under 28 U.S.C. § 1331, federal courts have jurisdiction to hear "only those cases in which a well-pleaded complaint establishes either that federal law creates the cause of action or that the plaintiff's right to relief necessarily depends on resolution of a substantial question of federal law." *Franchise Tax Bd. v. Constr. Laborers Vacation Trust*, 463 U.S. 1, 27-28 (1983).

Here, Defendant suggests that the Plaintiff's mere citations to these two federal statutes confers federal question jurisdiction. (*See* Doc. 1, Notice of Removal, ¶ 10). As discussed, the underlying complaint does not establish that federal law "created" the Plaintiffs' cause of action in Count 9 for invasion of privacy, because the Plaintiffs expressly state that the privacy invasion alleged "violated Alabama state law." (Doc. 1-2, Complt. ¶ 55). Moreover, Defendant has not shown, nor does the well-pleaded complaint establish, that the Plaintiffs' right to relief "necessarily depends on resolution of a substantial question of federal law." The invasion-of-

privacy tort claim can readily be resolved under Alabama common law, without implicating resolution of any federal question. The complaint, therefore, does not confer federal question jurisdiction.

### B.   Diversity Jurisdiction

As an alternative ground for establishing federal jurisdiction, the Bank raises diversity jurisdiction pursuant to 28 U.S.C. § 1332, which authorizes jurisdiction over cases when complete diversity of citizenship exists between the adverse parties and the statutory amount-in-controversy is met.  As to diversity of citizenship, Defendant Bank of Dade states that it "is a citizen of Georgia, only, and Plaintiffs are citizens of Alabama."  (Doc. 1, Notice of Removal, ¶ 3).  However, as to the amount-in-controversy requirement, the Bank's Notice of Removal falls short.

As an initial matter, the Defendant is not wrong to attach evidence beyond the complaint in order to meet its burden of establishing the jurisdictional amount.  *See Pretka v. Kotler City Plaza II, Inc.*, 608 F.3d 744, 762-63 (11th Cir. 2010).  However, it still must meet its burden of proving by a preponderance of the evidence that the amount in controversy more likely than not exceeds the $75,000 jurisdictional requirement.  *See Tapscott v. MS Dealer Serv. Corp.*, 77 F.3d 1353, 1357 (11th Cir. 1996) ("[W]e hold where a plaintiff has made an unspecified demand for damages in state court, a removing defendant must prove by a preponderance of the evidence that

8

the amount in controversy more likely than not exceeds the $[75],000 jurisdictional requirement."); *accord Roe v. Michelin N. Am., Inc.*, 613 F. 3d 1058, 1061 (11th Cir. 2010).  "Under *Tapscott*, the defendant must show that, if the plaintiffs prevail on liability, they will more likely than not be awarded over $75,000."  *McCollough Enterprises, LLC v. Marvin Windows & Doors*, 2009 WL 2216599 at *1 (S.D. Ala. 2009) (citing cases).

Based on the evidence submitted by the removing party, "Eleventh Circuit precedent permits district courts to make reasonable deductions, reasonable inferences, or other reasonable extrapolations from the pleadings to determine whether it is facially apparent that a case is removable." *Roe*, 613 F. 3d at 1061-62 (internal quotes omitted).  Moreover, "courts may use their judicial experience and common sense in determining whether the case stated in a complaint meets federal jurisdictional requirements." *Id.* at 1062; *accord id.* at 1064.  On the other hand, reliance on "speculation" is "impermissible." *Pretka*, 608 F.3d at 771.

Here, the complaint gives no indication of the value of the Plaintiffs' various claims for relief, which relate to the Bank of Dade's foreclosure of their homestead, a farm in Dekalb County.  (*See* Doc. 1-2, Complt. ¶¶ 5–9; *see also* Doc. 1-3, at ¶ 6). The Bank argues that "the Plaintiffs [seek] recovery for damages arising out of Bank's foreclosure of four tracts of land, secured by four separate mortgages,

9

following default on a loan account, which, at the time of the foreclosure sale, carried a combined principle (sic) balance of over $300,000." (Doc. 1, Notice of Removal, ¶ 18). However, the court cannot accept the Bank's argument at face value because its projection of damages cannot be reasonably inferred from the Plaintiffs' well-pleaded complaint.

As a practical matter, the state court pleadings attached to the Defendant's Notice of Removal never specify the address of the property that was subject to foreclosure; neither do they provide a description of the land (other than it is a "farm that has been in the family for generations," *see* Doc. 1-3, ¶ 6). Also, the Plaintiffs' initial complaint refers to only one "note" created by the Defendant. (Doc. 1-2, Complt. ¶ 6). Though the Defendant ultimately may be correct that the foreclosure at issue in this case involved "four tracts of land" and "four separate mortgages," which carried "a combined principle (sic) balance of over $300,000," that information is not supported on the face of the complaint.

More importantly, the court finds no connection between the amount of damages speculated by the Defendant and the type of claims raised by the Plaintiffs. In their original verified complaint filed in state court on August 3, 2011,[1] the Smiths

---

[1]   On August 17, 2011, the *pro se* Plaintiffs added to their case a "Complaint for Temporary Restraining Order and Other Equitable Relief." (*See* Doc. 1-3). The civil cover sheet expressly indicates that the supplemental complaint did *not* seek money damages; instead, that

claimed unspecified money damages, including punitive damages and attorneys' fees, based on the following claims under Alabama law: Negligence; Wantonness; Wrongful Foreclosure; Slander of Title; Fraud; Intentional and/or Malicious Conduct; and Invasion of Privacy by Intrusion Upon Seclusion.  The first four claims relate to the Plaintiffs' allegation that the Bank wrongfully initiated the foreclosure action; the fraud claim relates to Plaintiff's allegation that the Bank "backed out at the last moment" of "an arrangement to sell a piece of the property to pay the note."

Though the Plaintiffs' failure to put a dollar figure on these claims is not fatal to the Defendant's attempt to establish the amount-in-controversy requirement for diversity jurisdiction, *see, e.g., Owens v. Life Ins. Co. of Ga.*, 289 F. Supp. 1319 (M.D. Ala. 2003), the Bank of Dade must still demonstrate that "the amount in controversy more likely than not exceeds the jurisdictional requirement."  *Tapscott v. MS Dealer Serv. Corp.*, 77 F.3d 1353, 1357 (11th Cir. 1996).  Yet the cases cited in the Notice of Removal are not sufficiently analogous to the case at hand to convince the court that the damages in this case more likely than not exceed $75,000.[2]

_____

complaint was filed as a request for an injunctive TRO "to stop an illegal foreclosure."  Further, it appears that the foreclosure occurred on August 5, 2011, while this case was pending in state court.  (*See* Doc. 1-3 at 5). Therefore, the court does not consider that filing in its assessment of the amount in controversy.

[2]  For instance, the *Duck Head Apparel Co. v. Hoots*, 659 So. 2d 897, 908 (Ala. 1995), case the Bank cites to support the idea that "mental anguish" damages "theoretically" can exceed $1,000,000 is inapposite, as it involved claims based on a breach of employment contract.

The Bank even admits it is "unaware of a similar type of complaint . . . ever having been filed in Alabama or in the Eleventh Circuit." (Doc. 1, ¶ 22). The court refuses to engage in the type of speculation that the Defendant proposes to conclude that the jurisdictional amount-in-controversy requirement is met.

The court also observes that any money damages sought by the Plaintiffs in their original verified complaint, which included damages arising from the Defendant's allegedly tortious behavior and fraud, do not necessarily correlate to the $300,000 figure that the Bank suggests as the outstanding principal balance of the loan secured by the mortgages on the foreclosed property.  Using its judicial experience and common sense, *Roe v. Michelin N. Am., Inc.*, 613 F. 3d 1058, 1062 (11th Cir. 2010), the court reasonably infers, based on the information extrapolated from the complaint, that the value of the Plaintiffs' claims would more likely relate to the value of the property foreclosed upon, rather than the loan balance.  The Bank's silence on this point is remarkable.  In any case, the jurisdictional amount is not facially apparent from the underlying complaint, and the court finds that the Defendant has not sufficiently met its burden to establish that the amount in controversy "more likely than not" exceeds $75,000, exclusive of interest and costs.

---

Moreover, the court will not rely on "theoretical" damages to find that a removing party has met its burden of proof.

12

*See id*. at 1061.

Accordingly, this case is due to be **REMANDED** to the state court for further proceedings.  A separate order in accordance with this opinion will be entered.

**DONE** this the 31st day of August, 2011.

**VIRGINIA EMERSON HOPKINS**
United States District Judge

13